United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CISNEROS,<br>　　　　Plaintiff,<br>　　v.<br>J. VANGILDER, et al.,<br>　　　　Defendants. | Case No. 16-cv-00735-HSG<br><br>**ORDER GRANTING DEFENDANT CUPP'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Re: Dkt. No. 214 |
| DANIEL MANRIQUEZ,<br>　　　　Plaintiff,<br>　　v.<br>J. VANGILDER, et al.,<br>　　　　Defendants. | Case No. 16-cv-01320-HSG<br><br>Re: Dkt. No. 217 |

Pending before the Court is Defendant Sergeant Scott Cupp's renewed motion for judgment as a matter of law, following a jury trial in two related matters, *Cisneros v. Vangilder*, No. 16-cv-0735-HSG, and *Manriquez v. Vangilder*, No. 16-cv-1320-HSG. The Court held a hearing on the motion on December 11, 2019. *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 219. For the reasons detailed below, the Court **GRANTS** the motion, finding that Defendant Cupp is entitled to qualified immunity.

**I.　BACKGROUND**

This case arises out of an incident that occurred on June 4, 2015, in the Pelican Bay State Prison. At the time of the incident, Plaintiffs Daniel Cisneros and Daniel Manriquez were prisoners being housed at Pelican Bay, while Defendants were Pelican Bay corrections officers with various responsibilities regarding the supervision of Plaintiffs and Plaintiffs' housing unit,

1  including: Defendant Justin Vangilder (the unit's control booth officer), Defendant Juan Vasquez
2  (the unit's floor officer), and Defendant Scott Cupp (a sergeant, who had primary supervisory
3  responsibility for the unit). *See, e.g.*, *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 202 at 17–18; Dkt.
4  No. 208 at 44:3–18, 50:22–53:6; 215:18–20; 217:12–218:8; 241:7–19. On the date of the
5  incident, at approximately 5:00 p.m., while Plaintiffs were in their cells, a chemical grenade
6  discharged in the control booth of the housing unit. *Id.*

7  Based on these facts, Plaintiffs brought a claim against Defendants under 42 U.S.C.
8  § 1983, alleging that Defendants violated Plaintiffs' rights under the Eighth Amendment to be free
9  from cruel and unusual punishment when Defendants were deliberately indifferent to a substantial
10 risk of serious harm to, and/or a serious medical need of Plaintiffs. *See Cisneros*, No. 16-cv-0735-
11 HSG, Dkt. No. 55 at ¶¶ 50–55. Plaintiffs also alleged that Defendants Vangilder and Vazquez
12 were negligent, and that their negligence was a substantial factor in causing Plaintiffs harm. *Id.* at
13 ¶¶ 38–41. A jury trial was held on these claims beginning on June 19, 2019. *See id.*, Dkt. Nos.
14 203, 204.

15 During trial, Plaintiffs testified that vapors from a T-16 oleoresin capsicum chemical
16 grenade, which Defendant Vangilder had discharged in the control booth, entered their cells,
17 causing them pain and suffering. Plaintiff Cisneros testified that he experienced myriad
18 symptoms, including difficulty breathing, coughing, gagging, and a burning sensation in his eyes,
19 nose, and throat. *See, e.g.*, *id.*, Dkt. No. 211 at 217:12–218:8. Similarly, Plaintiff Manriquez
20 testified that he couldn't breathe, was "gagging, coughing, choking," and was panicking because
21 he felt a burning sensation in his nose and throat and he couldn't breathe. *Id.*, Dkt. No. 208 at
22 52:6–53:15. Plaintiffs and their witnesses testified that the prisoners were yelling "man down," a
23 term used in the prison to solicit help from the guards. *See, e.g.*, *id.* at 220:3–20. Plaintiffs and
24 their witnesses further testified that, after feeling the effects of the chemical agent, they and other
25 prisoners repeatedly requested medical attention and the opportunity to exit their cells and
26 decontaminate, but Defendants ignored their requests. *See, e.g.*, *id.*, Dkt. No. 208 at 54:12–57:10;
27 Dkt. No. 211 at 221:1–224:9. Defendants denied that Plaintiffs (or any other prisoners) requested
28 any medical attention or the opportunity to exit their cells and decontaminate. *See id.*, Dkt. No.

1  209 at 380:9–381:9, 401:1–13; 430:10–17.

2  The testimony further established that after Defendant Vangilder discharged the T-16
3  chemical grenade, he called his supervisor, Defendant Cupp. *See Cisneros*, No. 16-cv-0735-HSG,
4  Dkt. No. 209 at 374:18–375:17; 413:4–414:6. He told Defendant Cupp that the T-16 canister
5  malfunctioned and deployed. *Id.* Defendant Cupp told Defendant Vangilder to see a nurse for a
6  medical check. *See id.* at 379:9–17. Defendant Cupp also took the T-16 canister from Defendant
7  Vangilder, who by that point had put it inside a bag. *See id.* at 374:2–25; 465:23–466:16.
8  Defendant Cupp took the bag containing the chemical grenade outside because Defendant
9  Vangilder had told him it only partially deployed. *See id.* at 466:17–467:14. Once outside,
10 Defendant Cupp removed the pin and released the spoon from the chemical grenade to fully
11 deploy it. *See id.* at 431:1–9, 466:17–467:14. Defendant Cupp testified that he was present for
12 approximately five to ten minutes. *See id.* at 467:15–18. He then left and took the spent canister
13 to the prison's armory, which disposed of the spent canister and replaced it with a new one. *See
14 id.* at 469:15–470:22. He did not check on the prisoners, and testified that he did not hear anyone
15 coughing or needing assistance. *See id.* at 467:19–468:19; 482:13–486:10. Nor did Defendant
16 Cupp ask the other officers to check on the prisoners in the housing unit to determine if they
17 needed any medical attention. *See id.*; *see also id.*, Dkt. No. 208 at 249:2–25.

18 At the end of Plaintiffs' case-in-chief, Defendant Cupp moved for judgment as a matter of
19 law under Rule 50(a) on qualified immunity grounds. *See id.*, Dkt. No. 211 at 274:18–23, 289:17–
20 298:10. The Court took the Rule 50(a) motion under submission. *See id.* In deferring ruling on
21 the motion, the Court instructed the parties to submit special interrogatories for the jury to resolve
22 certain facts relevant to the issue of whether Defendant Cupp was entitled to qualified immunity.
23 *Id.*

24 On June 21, 2019, the jury returned a verdict in favor of both Plaintiffs. *See id.*, Dkt. No.
25 206; *see also Manriquez*, No. 16-cv-1320-HSG, Dkt. No. 209. The jury: (1) found Defendant
26 Vangilder was negligent, and awarded Plaintiff $1,000 each in damages to compensate Plaintiffs
27 for their claims against him; (2) found Defendant Vazquez was both negligent and deliberately
28 indifferent, and awarded Plaintiffs $1,500 each in damages to compensate Plaintiffs for their

3

1 claims against him; and (3) found Defendant Cupp was deliberately indifferent, and awarded
2 Plaintiffs $2,500 each in damages to compensate Plaintiffs for their claims against him. *See id.*
3 Thus, in total, the jury awarded Plaintiffs $5,000 each. *Id.* However, in response to the special
4 interrogatories included on the verdict form, the jury found that Defendant Cupp was neither
5 aware that Plaintiffs suffered harmful effects from exposure to the chemical grenade, nor did he
6 know that Defendants' ventilation efforts were inadequate. *See id.* at 4, 6. It is on the basis of
7 these responses that Defendant Cupp now moves the Court for judgment as a matter of law
8 pursuant to Federal Rule of Civil Procedure 50(b), and in the alternative, for judgment
9 notwithstanding the verdict under Rule 49(b)(3)(C). *See Cisneros*, No. 16-cv-0735-HSG, Dkt.
10 No. 214.

## II. LEGAL STANDARD

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). In considering a Rule 50(b) motion that reasserts arguments presented in a Rule 50(a) motion, a court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion. *Castro v. Cty of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016). Substantial evidence means "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence. *Id.* (quotations omitted). A court should only grant a Rule 50(b) motion if, after construing all evidence in the light most favorable to the nonmoving party, the record "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* (quotations omitted).

## III. DISCUSSION

Defendant Cupp renews his Rule 50 motion, again contending that he is entitled to qualified immunity. Defendant urges that, although the jury found him deliberately indifferent to Plaintiffs' serious medical needs following exposure to the T-16 chemical grenade, the jury also specifically found that he (1) was not aware that Plaintiffs suffered harmful effects from the

4

exposure to the chemical grenade and (2) did not know that Defendants' ventilation efforts were inadequate. The Court first addresses Defendant Cupp's qualified immunity argument, then addresses what implications, if any, this has for the damages award to each Plaintiff.

### A. Qualified Immunity

#### i. Legal Standard

"[D]efendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Supreme Court has noted, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 194, 201 (2001)). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*; *see, e.g.*, *Pearson*, 555 U.S. at 243–45 (concluding that officers were entitled to qualified immunity because their conduct was not clearly established as unconstitutional because the "consent-once-removed" doctrine, upon which the officers relied, had been generally accepted by the lower courts even though not yet ruled upon by their own

5

federal circuit).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *See id.* Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002). It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Id.*

### ii. Analysis

Defendant Cupp contends that even though the jury found that he violated Plaintiffs' constitutional right to be free from cruel and unusual punishment through his deliberate indifference, he is nonetheless entitled to qualified immunity because at the time of the incident it was not clearly established that his conduct violated the Constitution. More specifically, Defendant cites *Clement v. Gomez*, which analyzed when an officer may be found deliberately indifferent to a serious medical need. 298 F.3d 898, 904 (9th Cir. 2002). The Ninth Circuit held that officials "may have been deliberately indifferent to the prisoners' serious medical needs if in fact they were aware of the harmful effects of the pepper spray and of the inadequacy of their ventilation methods and yet purposely refused to provide showers, [or] medical care . . . ." *Id.* Here, however, the jury found that Defendant Cupp was *not* subjectively aware that Plaintiffs suffered any harm, nor that the ventilation efforts were inadequate in the housing unit. *See, e.g.*, *Cisneros*, Dkt. No. 206 at 2, 6.

Plaintiffs nevertheless suggest that Defendant Cupp "made a conscious choice to disregard the consequences of [his] acts or omissions by failing to check on the well-being of the prisoners when he had good reason to know that there was a substantial risk of serious harm." *See id.*, Dkt. No. 216 at 7 (quotations omitted). The Court is not persuaded. Plaintiffs' emphasis on what Defendant Cupp "had good reason to know" attempts to convert the subjective knowledge

requirement in *Clement* into an objective one. Yet the Supreme Court has held that deliberate indifference requires an officer's subjective awareness. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *see also Clement*, 298 F.3d at 904 ("[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (quotation omitted)).

*Clement* further underscores this requirement in the context of withholding medical assistance regarding the effects of chemical agents. *Clement*, 298 F.3d at 904. There, officers at a prison administered bursts of pepper spray to stop a fight among inmates. *See id.* at 902. Some of the pepper spray vapors circulated to inmates in nearby cells, causing difficulty breathing and asthma attacks for at least two inmates. *Id.* The Ninth Circuit denied qualified immunity at the summary judgment stage, concluding that there were sufficient facts from which a jury could find that the officers purposefully refused to provide medical assistance despite being "aware of the harmful effects of the pepper spray and of the inadequacy of their ventilation methods." *Id.* at 904. In other words, there was evidence that could support a finding that defendants knew the inmates had been affected by the pepper spray. *Id.* at 904–906. Here, however, the jury found that Defendant Cupp was not aware that Plaintiffs suffered harmful effects from the discharge of the T-16 canister.

Plaintiffs next suggest that the special interrogatories merely establish that Defendant Cupp lacked subjective knowledge about these *specific* Plaintiffs' serious medical needs (*i.e.*, Cisneros and Manriquez), but that the jury must have believed that Defendant Cupp "had actual knowledge that prisoners in Plaintiffs' pod were suffering." *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 216 at 5. But again, Plaintiffs' argument appears to be that Defendant Cupp should have known of Plaintiffs' serious medical needs based on the other facts in the record. But the Court need not speculate, as the jury explicitly found that Defendant Cupp was *not* aware that Plaintiffs suffered harmful effects from the exposure to the chemical grenade. Plaintiffs have offered no basis on

7

which the Court may disregard these findings, and the Court declines to do so.  In sum, the Court finds that given the jury's specific findings that Defendant Cupp was not aware that either Plaintiff suffered harmful effects from exposure to the T-16 canister, and was not aware that Defendants' ventilation efforts were inadequate, Defendant Cupp is entitled to qualified immunity.

Because the Court finds that Defendant Cupp is entitled to qualified immunity, the Court does not address Defendant Cupp's alternative argument under Rule 49.

### B. Damages

Plaintiffs argue that even if the Court were to grant Defendant Cupp's motion, they are entitled to the full $5,000 in damages.  *See Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 216 at 8. Plaintiffs suggest that Defendants should be found jointly and severally liable.  *Id.*  This is belied by the verdict form itself, however, on which the jury entered discrete damages amounts for each Defendant.  *See id.*, Dkt. No. 206.  The jury awarded each Plaintiff $1,000 against Defendant Vangilder; $1,500 against Defendant Vasquez; and $2,500 against Defendant Cupp.  *See id.*

Plaintiffs rely on *Hazle v. Crofoot*, in which the Ninth Circuit found that because the defendants had caused the plaintiff actual injury, the plaintiff was entitled to an award of compensatory damages.  *See* 727 F.3d 983, 991–92 (9th Cir. 2013).  *Hazle* is simply inapposite. Because there was no question in *Hazle* that the plaintiff had suffered injury and the defendants were liable, the Court found error in the jury's zero-damages verdict.  *Id.* at 993–95.  The Court had no reason to address—and therefore did not discuss—the apportionment of damages among the defendants.  But here, in contrast, the jury made that determination on its own.  The verdict form clearly determined that Defendant Cupp was responsible for $2,5000 of the $5,000 in total damages awarded.  *Cisneros*, No. 16-cv-0735-HSG, Dkt. No. 206.  Because Defendant Cupp is qualifiedly immune, Plaintiffs are each only entitled to an award of $2,500 from Defendants Vangilder and Vasquez.

### IV. CONCLUSION

Accordingly, the Court finds that Defendant Cupp is entitled to qualified immunity and **GRANTS** his renewed motion for judgment as a matter of law.  The Clerk is directed to enter judgment in favor of each Plaintiff against Defendants Vangilder and Vasquez, in the amount of

8

$1,000 against Defendant Vangilder and $1,500 against Defendant Vasquez, consistent with the jury verdict, *see* Dkt. No. 206, and in favor of Defendant Cupp consistent with this order, and to close the case.

**IT IS SO ORDERED.**

Dated: 1/13/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge